Mr. Gambino. Thank you. Good afternoon, Your Honors. My name is Michele Gambino. With me is David Barger from Greenberg Tariq. We're here today for Lord & Taylor. Your Honors, we're here today because the District Court committed reversible error when it granted White Flint's premature motion for summary judgment on count two of Lord & Taylor's complaint which sought specific performance of Lord & Taylor's restrictive covenants over the White Flint Mall in Maryland. We ask today that the District Court's decision be reversed and that count two be remanded so that Lord & Taylor could have its day in court and so that it can still get the injunctive relief it's all for. The court committed reversible error. Tell us up front exactly what you say the injunctive relief should have covered. The injunctive relief should have said landlord is precluded from demolishing the enclosed mall and the parking lots in contravention of section 6.1 B of the restrictive easement agreement period. So you would stop there and didn't have to go to the first class shopping center and other things that were in the agreement. Absolutely, Your Honor. That is the rub, I guess, of this argument and the fallacy in the court's decision. We asked, Lord & Taylor asked for negative injunctive relief. Count one sought a declaratory judgment that basically said the restrictive easement agreement is an enforceable agreement that requires you to carry out the obligations there under. I call this bucket number one. Run a first-class mall. Second, count two. That's still pending in the district court. It is, Your Honor. It is. Count two speaks to the second bucket which is our real property rights. Enforce our real property rights. Lord & Taylor had real property rights. It's undisputed in this case and and the real property rights are set forth in the restrictive easement agreement. Those real property rights protect Lord & Taylor from a second-story garage right into its door. Those real property rights are separate and apart from the whole idea of run a first-class mall. Those separate property rights are always in Maryland law typically enforced by way of an injunction via specific performance. The court committed reversible error here for three different reasons with respect to those rights. One, Lord & Taylor all I had to do under Redner's versus Jobaton, which this court just affirmed less than a month ago, was show the existence of covenants. That's not disputed here. Two, breach that they intend to breach those covenants. They absolutely intend to knock down the mall and knock down the parking lots. That's not disputed. They haven't done it yet, but they intend to do it. And three, the equity favors enforcement and what the district court had before it at that time. The district court had before it five different affidavits from various applicants who said this is what the restrictive covenants are, this is why they were important, this is why we bargained for them, this is what they protect, this is how we'd be catastrophically harmed if they're rendered meaningless. The court had before it all that summary judgment proof and nevertheless the court found that summary judgment should be granted. That was error. There was issues of fact that should have given Lord & Taylor its day in court. And in fact... Can I get some factual background here? Yes, your honor. Why is it that Lord & Taylor is so opposed to the development of this? I mean, you have a shopping center, seems to be very different from what it was at the beginning. I mean, you've got the other anchor, Bloomingdale's, which has left. You know, something like a 75% vacancy rate among the smaller tenants. And these white bank comes along, they're the less the, I guess, number of grants of lots of you know, what an awful lot of shopping centers across the country are doing to revive themselves instead of just retail outlets and everything. It's a combination of residential, commercial, plaza, entertainment. And so you've got a, both in theory and fact, a dying business model on the one hand and a plan for might, in some way, work the Lord & Taylor's benefit. Now, you know, I know that's not the legal issue you're arguing, but I would be interested in just factually why you are so dead set, opposed to this. Is it a negotiation position to drive up the cost of what white plants have to pay for you? Yes, your honor. It's not. Lord & Taylor never sought damages. It's not a leverage piece. It's not to extract some pie-in-the-sky figure. Had Lord & Taylor... If there's no injunction available, then, you know, you become the party, which stands in the way of white plants' proposed development plans, and you can exact a pretty price. Well, your honor... I think... Yes, your honor. Is that what's at play here, that you want to be the impediment to white development plans so that you will receive a great deal of money in return for relinquishing your right? I just, I'm not saying that that's wrong. If you have the right, you have a right to stand by it. But the question I want to, in real world terms, what's at stake? The answer in real world terms is absolutely not. That is not why Lord & Taylor filed this suit. Lord & Taylor filed this suit not to extract a giant payout, but instead to protect its real property rights, as it has a right to do. Lord & Taylor is not so opposed to progress. It is not so opposed to any future plan that might benefit it, as alleged. Lord & Taylor, the record before the court, shows Lord & Taylor sat with white plant and its engineers, and it got its own engineer, and said, let's work on a plan that will work for everybody. What we want is a say at the table. What we're entitled to under our contract, under 6.1, is a say at the table. We don't want to have our rights, our real property rights, bulldozed over so that you can get an office building on there. And while your profits and you can make billions, my business basically tanks. That's what Lord & Taylor bargained for. Is this a viable property in the absence of a different plan and different configuration for the shopping mall? I don't think it even knows what it's going to do on the property. Notwithstanding that, Lord & Taylor filed the suit to have, because it gets a say at the table. When it negotiated this contract, and negotiated a language that says, you cannot alter our layout, you cannot change the enclosed mall in terms of the design, the level of floors, and you can't add increased density unless we consent to that. Because we want to have a say about where our store is, what's around us, and whether or not that's going to benefit our customers. And that's why Lord & Taylor filed this suit. You indicated that you thought Maryland law, which is controlling here, really disfavored any kind of, it doesn't require specific performance. I thought Maryland law allowed, the Errol's decision did not require specific performance if it involved ongoing supervisory decisions, if it involved ongoing supervisory duty. Just in terms of the Maryland law, I was not clear that specific performance was invariably required under Errol's if it thrust the district court into an ongoing supervisory position. What the district court was concerned about was becoming the manager of a shopping center on an ongoing basis, or having an overseer role with respect to the White Fence redevelopment plan. And doesn't Errol's Maryland law say specific performance or an equitable remedy is not mandated if it involves that kind of supervisory responsibility? Your Honor, respectfully, Errol's does not involve a case where specific performance is sought with respect to a restrictive covenant. Errol's involved a continuous operations clause, which is a separate plain vanilla contract clause, does not involve restrictive covenants. Every single case that involves restrictive covenants where an injunction is sought under Maryland law, specific performance by way of injunction has been granted. And it could have been granted here. Isn't the principle the same, that the question at the end of the line is whether in granting specific performance or an equitable remedy is going to put the district court essentially at the table for future redevelopment plans of the shopping center? And that was seen to be what the concern of the Maryland courts was, which particularly if there was an alternate remedy at law, and the question of course is whether damages are available to satisfy the right that you have. I know you probably think they are, and the other folks think they are. That would be something for the district court. I see the court's point. And the answer to the court's kind of inquiry is this. The injunctive relief here sought did not require the court to come to the table, did not require it to take off its robe and put on a hard hat, did not require it to re-let the mall, did not require it to rebuild any Bloomingdale store, as the court was concerned with. We have the trial court's record in the appendix before the court, and the court very clearly says, I am concerned that I will have to somehow supervise the re-tenanting of the mall or the rebuilding of the Bloomingdale store. And as a result of that, I think that I'd rather give you monetary damages. That's the problem with the court's analysis. There's no relief sought in the complaint where Lord and Taylor says, please re-let this mall, please restore Bloomingdale as a competitor to this site. I agree that in the transcript of oral argument, it looks like you did sort of keep notching down kind of the scope of the injunction you were looking for until you got to the one you talked about today. We're just saying you can't, you know, you can't execute on this sketch, whatever it's called. But didn't the district court also have a concern about that? I mean, at that point, then, right, the mall is half demolished. It's empty. It's like a judicial order that there must be a ghost mall in the middle of Rockville. How is that a sensible, equitable remedy? The equity, the equitable remedy is, Your Honor, you have to enforce the covenants. That's the equitable remedy. Renner's, which this court just affirmed, says if a party shows that equity fair is the enforcement of the covenants, then the injunction must lie. Right, right. But I guess I'm saying, can't it even under Maryland law? Isn't it sort of part of considering feasibility? Is it feasible to enjoin this project at this point? Absolutely. Part of feasibility is, and hang on, I'm going to put on my glasses so I get this right. Whether the burdens of going forward with the equitable remedy outweigh the advantages to be gained by the injunction and the degree of harm suffered if it's denied, meaning sort of how badly off will Lord and Taylor be? Why can't they look into all of that? Your Honor, the question of the feasibility, whether or not, as the court pointed out, Judge Harris, you thought that the mall was partially demolished. At the time the injunction was issued, only the Bloomingdale's store had been taken down. Rights that Lord and Taylor has no say over under section 6.1. We can't complain about Bloomingdale's. But to answer the court's question, those things, meaning, is it feasible for me to get involved and issue a negative injunction? Those very factors, is this an ongoing development? Is there a plan? What do they intend to do? When do they intend to do it? All fact questions. All fact questions that the court should have allowed us to get to. I think the point here is that equitable remedy is a discretionary traditionally with the district court. Judge Harris asked a question that's on my mind, too, which is, what's the practical balance here and isn't it permissible for the practical balance to enter into giving, a discretionary equitable remedy? Because the, I would imagine a good bit of planning has gone into the revised shopping center and, you know, to sort of bring a halt to it might be one thing that weighs against issuing an injunction. And I guess it goes back to the reciprocal easement agreement in the first place. And some of the terms of that seem to me to be loose where it says that you want White Fent to comply with its REA responsibility to operate a, quote, first class, high fashion, regional shopping center. Well, you know, what's first class is a matter in the eye of the beholder and what is high fashion can be a matter in the eye of the beholders. Some of us in this room might think something is high fashion and others might go, ugh. And so I wonder whether, again, this thrusts the district court into an arbiter of fashion. It hasn't, though. Into an arbiter of class and fashion. And, you know, there may be some district courts who could do that, but taste is notoriously subjective. Let me answer the court's question. I see I'm out of time, but I believe the court said I'll get the last word, so hopefully I can answer your question. To answer your question and to Judge Harris's point, which I thought was also a good one, the court believed it was going to have to be the arbiter of, say, high fashion and what constitutes this type of mall or running a first class mall. The court had within its ability, and it has an obligation, frankly, under Maryland law to give the injunctive relief that it can apportion, that it can give, i.e., you can't rip down the mall and you can't rip down Lorna Taylor's parking lots. But I will deny any request, at least that the court conceived, that requires me to decide and to make you run a first class mall. And so the court has an obligation. It's, as I said in my brief, it's as if a party sues for $100 at the trial court and it shows damages of 50. The trial court cannot dismiss the entire damage claim. I just want to get to J.T.'s question. What kind of injunction do you want the court to issue and how does the court dip its toe in the water without getting sucked in? It's very easy. I want the court to issue a negative injunction that White Flint agreed to be bound by in section 10.3 of the restrictive easement agreement that says, landlord White Flint, you cannot rip down the enclosed mall and the parking lots, period. If they can't rip down the enclosed mall, the court has now just carried out the benefit of the bargain that Lorna Taylor bargained for at the outset of this agreement. No, they haven't. This is what I'm so confused about. Obviously they haven't. You didn't bargain, in all fairness to your position, to be next to a ghost mall, you know, to have a walkway to a parking lot that nobody uses because the mall is empty. So it does seem that at this stage in the proceedings to grant the injunction would both mandate, you'd have a court order that there be an empty mall in the middle of Rockville and you still wouldn't even get what you asked for. Your Honor, but that's up to White Flint in terms of we do get what we ask for. We don't want to have buildings built right on top of our footprint, office buildings, apartment buildings, and basically be captive to a development that we never agreed to put our store in. I guess I understand that you're saying we're willing to settle at this point for being next to an empty mall. Yes, Your Honor. Okay, but can't the district court take into consideration that granting this equitable relief, and I guess I'm asking the same, can you put your toe in the water? It's still not going to make you whole. So why is this equitably a good thing to do? Because it carries an empty mall in the middle of Rockville that doesn't make you whole. Because the court doesn't have to decide what constitutes a good bargain for the court or a bad bargain for the court. The parties already decided what constitutes a good bargain. And the parties said that if one of the parties chooses or threatens to violate the covenant, including the covenant to change the layout and the design of the mall, then the party has a right to seek an injunction and seek specific performance. It's not necessary. You have a right to seek an injunction. But there are all kinds of remedies for contractual rights. And one of those remedies is a remedy at law. And I'm concerned about the point that Judge Harris made, whether this is a practical matter. It's good for us to bring this development to a screeching halt, to put the court in some sort of ongoing supervisory position, which I think it would, if an adequate remedy at law exists. Why should we mandate, essentially, a black hole in the middle of this community for an are ascertainable in the event that your rights have been violated? And I reserve judgment on that question, because I don't know. It hasn't been litigated. And I don't know whether your rights have been violated or not. But as a practical matter, just for the good of the community, I'm concerned about creating an eyesore right in the middle of the community. And that troubles me, because then we would be interpreting all of these agreements, all these shopping center agreements, in a way that promotes ossification, yes, and in a way that does not allow communities to adapt to changing circumstances and to move in the direction of providing a more attractive environment for the residents. I'm not saying you should go without a remedy. You shouldn't, if there's been a violation of rights. But I'm concerned about this remedy. And there's some basis, at least, for believing damages are ascertainable. Would you want to get to that on rebuttal? I'm happy to get to it now, or rebuttal, whatever. Get to it on rebuttal, and just think about it. Will do, Your Honor. Whether this is really the road we want to go down. Of course, the road you want to, your client wants to go down. But at some point, the public interest has got to be entered in. I know the public is not a party to the suit. But I go back to, this was summary judgment. A summary judgment filed eight weeks after the lawsuit was filed. A summary judgment where the public interest, to the court's point, was absolutely, and still is, disputed. But I will go back on rebuttal, and I will answer the court's question, and I will tell the court. Thank you very much. OK. Mr. Morrison. Thank you, Your Honor. May it please the court, and good afternoon. My name is Scott Morrison, and I represent the FLE White Flint. This case presents a very straightforward issue, which is simply, did the district court abuse his discretion in denying a permanent injunction? Sitting in diversity, the judge has no choice but to apply Maryland law. Like every state that I know, the entry of a permanent injunction is a drastic remedy, and it's disfavored. The request for permanent injunctive relief by Lord and Taylor put this district judge in an impossible position. Judge Harris, as you correctly point out, there's two aspects of the argument. The facts are undisputed that at the time the injunction was denied, the mall was 75% vacant. It's now 100% vacant. The mall, at the time the injunction was denied, was partially demolished on the interior. It's now 100% demolished. Application has been made to Maryland for an exterior demolition permit. We expect to have that shortly. And so the trial court— The first two points are that the mall was 75% vacant. Bloomingdale's, which you alluded to, constituted 33% of the total square footage of the mall. They left without objection a year before this lawsuit was even brought. So the first question that the district court has to decide is, can I leave this mall? Does it make sense as a practical matter to leave a 47-acre regional mall empty? And this is what he said. The project is well into the advanced stages such that it is no longer a practical option to maintain the mall in its current state. Lord and Taylor continues to assert that all this court must do is state that the shopping center site cannot be altered in violation of the REA. And enjoin Whiteflint from constructing its mixed-use development. And they are not asking for rebuilding or bringing tenants back to the mall. I'll address your question, which was the first question, in a moment about what are they actually seeking from the court. The district court goes on to state this argument ignores the reality that the mall is almost completely vacant and partially demolished. Lord and Taylor simply waited too long to attempt to preserve a status quo that no longer exists and thus injunctive relief is clearly no longer feasible or realistic. I'm sorry, is that the opinion that's on review now? That was on when they went back to the judge for a motion to stay, pending appeal. And the joint appendix site is at page 814. Um, in his opinion that's on appeal, he says... I have another question about that. So your view is that we can consider sort of that, along with the decision that's actually under review, as though it's all kind of one opinion of the district court. I think so. I don't see why that would be a problem. The issue again is, has there been an abuse of discretion in denying the permanent junction? We all know, and it makes no sense whatsoever, to leave a 47-acre mall in the middle of Montgomery County and Bethesda vacant. The next question then is, well, were they actually seeking more than that? And they were, if I may. The verified complaint in this case is very clear. And I refer the court to the joint appendix at page 18 and 19. This is, and I'm going to read from paragraphs 44 and 45 of the verified complaint in count two. Your question to counsel, Judge Agee, was, you know, what are you seeking in your order? Judge Harris, you pointed out that they've been backpedaling all along, and they continue to backpedal in front of this court. Here's what they pled. This is the relief that they asked the district court to order. Paragraph 44 of the verified amended complaint states, Lord and Taylor further asked the court, in conjunction with maintaining the status quo, to require landlord to abide by its obligations under the agreement to operate a first-class high-fashion regional retail shopping center at the site, and enjoin landlord from taking any steps to prematurely vacate the mall's retail tenants while the agreement is in effect. Now, to me, that's very clear. They want the district court to order that we, as the landlord, continue to operate the mall. But if there's any ambiguity, you go to the next paragraph, which is paragraph 45, and here's what Lord and Taylor pleads. Consequently, by issuing the injunction, the court will be maintaining the status quo and ensuring that landlord will continue to honor its contractual obligations and operate a first-class retail shopping center with a vibrant and tenant-occupied enclosed mall while the agreement is in effect. The district court was very troubled, and it's reflected in the transcripted oral argument, with how you would fashion an injunction remedy that could be enforced. And he had two concerns. Your opposing counsel said that, I guess we went too far. District court, we're not going to argue with the district court denying injunctive relief as far as that goes. But what about the parking lot? Well, there's no, the structured parking lot that's protected under the sublease with Lord and Taylor hasn't been demolished and isn't going to be demolished. So there's no issue. It's just like when they came the first time for an emergency stay, and you were on that opinion, Judge Agee, where they misled the court, hopefully unintentionally, made it seem like we were knocking down the Lord and Taylor store. It's a standalone facility. They lease the ground, the store operates. It had a fabulous Christmas. It was the only shopping center in the metropolitan area in Washington, D.C. that didn't have any parking issues. And it was packed because I personally went down there and saw it. So I think that the, I don't know if I answered. Well, not exactly. I mean, if they've taken off the table, the things that seem to bother the district court judge, and you're back to don't knock down the parking garage or don't dozer up the parking lot. But that was never an issue that we were going to do that. The mall is separate from the Lord and Taylor store. They rent the pad, they built the store, and they operate it. And the parking, the surface parking, the structured parking, that's part of that pursuant to the sublease, not the REA. None of that has been touched or will be touched. It's their property. The mall is not their property. They don't have any rights to be at the table. They don't have any rights to dictate what should or should not occur when you have a mall that is dying. The jury and the district court are going to have to decide if the landlord has violated the REA. And that's a question simply depends on what Judge Wilkinson, you alluded to. These type of malls of this size throughout the country are dying. It's dying. And our argument simply is that we have an obligation under the REA to operate a first-class shopping center. And this is the only way to do it. The motive here is very important. And I think this panel is suspect of Lord and Taylor's motive. We have an affidavit before the court that is unrebutted. And if I could just give the site, it's at JA 714 and 750. The senior most person at Lord and Taylor, who happens to be sitting in this courtroom, Brian Paul, told our head of development that if this redevelopment proceeded, it would double the gross sales of the Lord and Taylor store at the site. Is this in the record? It's in the record. It's at JA Joint Appendix, page 714 and 750. It's Ed DiAvola's affidavit. Excuse me, don't allude to somebody's presence in the courtroom. I'm sorry, Your Honor. They have a right to come into the courtroom. They do. They have every right to be here without having their personal presence to allude to. You overstepped. I apologize. And I ask the court to forgive that. So I think when we're talking about motive, it's not the motive that's been identified as they want to sit at the table. The motive that I think Your Honor alluded to is much more correct, which is they want to pay out for getting out of the way. And we're talking a multi-million dollar payoff. And that's not what the district court is required to do. And fashioning an injunction remedy, which is under Maryland law, again, a very drastic remedy, it's sparingly used, there's no doubt that that is the practical effect. Well, the trouble that I have in this whole case is I don't want to put Maryland law in the position of saying in a situation where there's something like a reciprocal easement agreement in this case that may have some restrictive covenants and the like, um, that there's invariably an obligation to go the route of specific enforcement and to issue injunctions. Because if you push that too hard, you seem to me to really impair the rights of communities to rejuvenate themselves um, at a time when the property interest can be vindicated through a remedy at law. And that's the situation I don't want to drive too hard. Well, it's a very good point, Your Honor, because as we've discussed in the brief at length and also before the district court, Montgomery County has approved what is referred to as the sector plan. That is to bring smart growth to that area of Bethesda. And so it turns out that the White Flint parcel that we're talking about is the largest single parcel within the sector plan. And it comprises approximately 10 percent of the entire plan. We have another affidavit in the record from the head of planning for Montgomery County that discusses the benefits that led the Montgomery County Council to approve the sector plan. So going back to your question, Judge Harris, about leaving the mall vacant, you're not only going to be creating a real problem, this attracts drug dealers and criminals and all that sort of element, but you're going to drastically undercut Montgomery County's ability to proceed with the sector plan because they're counting on the redevelopment of White Flint as an essential component of that plan. And all of that is in the record. So this is what the district court was faced with. He's given an impossible choice. He can either enjoin a mall that's dead and largely vacant. Maryland law does not allow a state or federal judge under arrows to come in and get involved in what would require continuous supervision, operation, and management. And the arrows case is very instructive. Arrows was back in the day, you used to go to arrows and rent videos. And those stores are maybe 8,000, 10,000 square feet. They're small. They quit operating. And a continuous operations clause is a type of restrictive covenant. And what the Maryland Court of Special Appeals said is, wait a minute, you're claiming that all you want is a negative injunction. You simply want arrows to continue to operate that store. But it's not so simple. You have to hire employees. You have to get the merchandise. You have to pay your taxes. We have to rebuild the space. That's an 8,000 to 10,000 square foot store. We're talking about a mall that's 800,000 square feet. So the district judge was very, very concerned, not only about how do I write an order, but getting, putting your toe in the water and getting sucked into becoming the referee for rebuilding a first class mall. It's not allowed by Maryland law. And ironically, they cannot point, we have been unable to find a case in state or federal court that, where any judge has ever entered a permanent injunction in the context of an 800,000 square foot mall. Every case that they cite are little cases like Redner's. You got two stalls. You're not talking about taking an 800,000 square foot mall that's 75% vacant, now 100% vacant, and re-tenanting it. It's impossible. And it's not the province of- If I can, if I may, I suppose the counter argument would be, again, by the time oral argument finished, they weren't asking for re-tenanting. All they were asking for was you can't knock down the mall, which I understand is different from the parking lot around Lord and Taylor, but you can't knock down the adjacent mall and the parking garages in the adjacent mall. That's all they were asking, a negative injunction. And I did understand the district court, certainly by the time of that second opinion, to be saying, well, that's just not practical. But that's not exactly the same thing as feasibility, right? It might be feasible. It's just, it seemed like he was saying more like it's just dumb. Why would anyone, you know, insist by court order that there be a vacant mall in the middle of what I think of as Rockville that you think of as Bethesda? There are two points. One is that they're not just asking for a negative injunction. And I read the paragraphs of the complaint. But does it matter if an oral argument before the district court, they did say, look, forget that. We're just here for- And he alluded to that in the decision that I quoted from. Let's talk about that part. I understand that complaint. But he did find in the first opinion, specifically, that it was not feasible. It wasn't just practical, if I may quote from the opinion. He starts, he says, while I facetiously said I didn't get a hard hat in law school, the reality, though, is whether this is something that this court has the competence to enforce by way of injunction and or specific performance at this time under the circumstances we have here. This is not a case in which I can simply say, get rid of that tenant. That was Redner's. Or don't let that tenant come in. There has been an enormous change at White Flint. There has been an enormous change that's gone on at White Flint in terms of physical changes, tenant changes, and the ability of this court to grant relief would be very problematic. He then goes on to say, the Maryland law makes it clear that specific performance is an extraordinary remedy that should be granted only when more traditional remedies, such as damages, are either unavailable or inadequate. I'm troubled by the feasibility of me telling them to restore everything that was in the sketches. For me to enter into this case and try to enjoin an ongoing development project like this is just not feasible. And it's not feasible. I've spent 30-something years in real estate litigation. Trying to develop a regional mall on 47 acres is a very difficult thing. And I think this judge correctly exercised his discretion under all of the circumstances where he felt he lacked the competence that Maryland law does not allow it under ERLs for a judge to actively get involved in the supervision of the affirmative injunction that Lord and Taylor was, in fact, seeking at the time. They backpedaled. And you can see that in the argument. Because when Judge Titus went in that direction, saying, look, I don't have a hard hat. How am I going to get involved? Most of the cases that we have had of this nature have been far more limited in scale. And they've involved very discreet, manageable controversies. They're almost in the nature of a landlord-tenant dispute with a particular... or a tenant is violating... the tenant will contend the landlord is violating a specific covenant about what hours of operation or what they can sell or whatever. But they're very discreetly focused and much more amenable to a specific enforcement remedy. But I haven't seen one of this breadth and scale. Which really, I kept thinking, isn't this something for the Planning Commission? I mean, it's the kind of discussion you can see going forward that would take place before a local planning commission. And I just haven't seen one with this much breadth to it. Well, I think you're absolutely correct, which is why I said earlier, it's very telling that Lord and Taylor cannot cite a case, not only from Maryland, but from any state in the union, where an injunction anywhere near in this context has ever been entered by any judge. And there's a reason for that. Injunctive relief is not a practicable, feasible remedy under these circumstances. And the district court's decision should be affirmed. Why don't you talk a little bit about the availability of a remedy at law? I was just going to ask you if I could address that issue. Maryland law is very liberal on proving up damages. And in fact, unlike some states, Maryland allows a new business who never even opened operations to move for lost profits. Lord and Taylor has almost 50 stores. Every time Lord and Taylor opens a new store, they do a market feasibility study in an area to determine whether that store is likely to be profitable or not. Those forecasts are done every day. And the business of Lord and Taylor depends upon their accuracy. There is no doubt from the sketch plan, and if I can give you the Joint Appendix site, the sketch plan is very detailed. It's in the Joint Appendix. And it has all of the specific components of the redevelopment. Expert witnesses on damages take like any developer would do. And you look at what's that going to do to traffic count? What's that going to do to the road network system? How's that going to affect parking? And you make reasoned decisions about the impact on profitability. I don't know how Mr. Paul, in the affidavit I pointed out, he stated specifically that the gross sales of that Lord and Taylor store are going to double. He knows that. And he can calculate that. Lord and Taylor makes those decisions every day. And certainly experts in the area of damages... Your argument, if you were to prevail here on the injunction count, would be when you go back on the declaratory judgment count, that they're entitled to no damages. Well, in fact, they've amended the complaint and pled damages, both in the alternative, but now not as part of the alternative, in the declaratory judgment count. And I urge the court to take judicial notice. It's the second amended complaint where they specifically ask for damages. So the argument is going to be, our position below is going to be, this store is going to do very well. It's going to do better than it has done since 1977. I think the highest gross revenues of that store since 1977 has been about $23 to $25 million. You're getting far afield now. So I think...  Thank you, Your Honor. Thank you, Your Honor. Ambieno, it would be pleased to hear from you in rebuttal. Judge Wilkinson, I'm happy to answer the question that the court asked me prior to sitting down and letting counsel speak. I have no idea what it is. Okay, well, there's a list of hot topics. I'm going to try to hit about five of them, which reference many of the questions the court raised. First and foremost, let me talk about this affidavit. This affidavit is not before the court properly. It's a part of the appendix. However, it's not part of the factual record that the district court should have considered. It was not attached to the underlying motion for summary judgment. It was not part of their evidence. It was only after we opposed their motion for summary judgment that they attached it after the fact to the reply brief. We've cited cases in our appellate brief from various circuits showing why affidavits and evidence submitted on a reply brief should not be considered. And if it is considered by the district court, then the district court has to give Lord and Taylor the opportunity to obviously refute that evidence. The district court did not give us an opportunity to refute that evidence. And that alone... I don't think the case rises and falls on the affidavit. I know you both... But I want to clarify that. ...irritated by it, and I don't blame you. Yes, in no uncertain terms does Lord and Taylor believe that this redevelopment will in any way allow it to earn $40 million. And in no way does... I believe that a claim Mr. Paul made that... Pardon me, Your Honor? I suspected you might have... Yes, absolutely. That allegation is made as vehemently disputed. In fact, Mr. Paul provided an affidavit before the Fourth Circuit specifically saying no such statement was ever made. So I don't want that part of the record because frankly, it shouldn't have been... So next point. Okay, thank you. Going to Judge Harris's point. Again, yes, boiling the injunctive relief down, Judge Harris. It's a negative injunction. Please do not knock down the enclosed mall. Please do not knock down our parking lots. This is the first I've heard that all of a sudden they said, well, we've decided today before the three-court panel that we're not going to knock down the parking lot. Their sketch plan before the court certainly shows that the parking lot's not existing. Instead, there's office buildings. You gave an unstoppable argument to make in the district court. I think that absolutely, Your Honor, I could make that. But I also can make the argument that the court should be, that this court should reverse the district courts and enforce the injunction with respect to the parking lots and with respect to the enclosed mall. I think it's also interesting that now they come before the court and say we're not going to knock down your parking lots, but we are going to knock down the enclosed mall. Why one and not the other? The court made Judge Harris's point, well, it's not a practical remedy in a way because it's now 75% vacant. But, Your Honor, that ignores why. Why is it 75% vacant? That was a disputed fact question. We have evidence in the record that says that White Flint decided it wanted to go with a more lucrative development. What did it do in order to come up with a more lucrative development? Because it wasn't making the profit margin it wanted to make at the mall. It decided to vacate the mall. It started cutting deals. It started putting in these kick-out clauses of leases. It stopped recruiting new tenants. So part of the record here is whether that injunction would have made practical sense is one thing. But the court at the district level should have considered whether or not the status of the mall from a practical standpoint was something, a hardship that White Flint itself caused. Doesn't your last minute and a half of argument illustrate the danger of having the district court get into the business of mall management and trying to decide, you know, this and that as a predicate for an equitable remedy? Absolutely not. What it highlights to me, in my mind, is certainly the fact that the district court got into dangerous business by looking and having two sets of facts, two sets of disputed facts. Why is the mall like this? What caused it to be in this state? I feel like, having read the district court orders, it sounded to me like what the district court would say is, I don't care how it came to be this way. Sorry, right now I can't issue an injunction saying there needs to be an empty mall right on that street. It sounds to me, Your Honor, from being there, that the judge did say, I don't want to get involved. I just want this to go forward and you guys get money damages. And with all due respect, that's not the way the law works with respect to restrictive covenants in Maryland. The last two minutes have just indicated how the district court can get sucked in to the minutiae of mall management. And I'm telling you, this is not like the cases that we have seen before. In most of these shopping center cases involve a single, generally small, tenant. They most often come up in breach of contract actions. And we get, you know, people get involved in damages. But I just don't think there's any way that the district court can just stick its toe in the water. It would not be sticking its toe in the water in any respect to simply say, landlord, you shall not knock down the enclosed mall. You shall not knock down the parking lots. Because all the court is doing is giving effect to the party's bargain in section 6.1B. White Flint has been abiding by that agreement for 35 years without any judicial oversight whatsoever. The court does not need to dip anything in. All it needs to say is one sentence. You shall not rip down the mall. You shall not rip down the parking lots. That's decent. That's, I'm sorry. Good point. But that is what Maryland law requires. That's what Red Nurse requires. And let me last get to Judge Wilkinson's point about we see these cases and they're small cases. That's right. There has never been a landlord so brazen enough to say, I'm aware of the covenants. I know what they say. I don't care. I'm gonna make more money by violating the covenants. And let me give you some money for the breach. Is any of that in quotes? Well, Your Honor, I mean, that's the facts, though. That's what we have before the court. And we, every single case, in fact, we've cited numerous cases under Maryland law. And in every single case, an injunction has entered. In fact, White Flint. Yes, Your Honor. Don't you want to get some light? Your Honor, I've been waiting for this argument for a year. I could continue to stand here and answer a hundred more questions on this. I do. Your Honor, because the law in Maryland says if a party has restrictive covenants and can show breach and equity favors enforcement, specific performance is the appropriate remedy. It was the appropriate remedy before the district court. The district court can still today, because there's no redevelopment up, issue a negative injunction that says you cannot rip down the mall and you cannot rip down the parking lots. That requires no judicial supervision. It was error for the district court to grant the summary judgment of White Flint because there were issues of fact before the court that warranted Lord and Taylor to have a trial on all these matters, including whether or not the court believed it was feasible for an injunction to issue. And all we're asking for today is for Lord and Taylor to have its day in court. That's it. Have you had your day in court? Like I said, I could keep going about this case. You've made a very fine argument. Thank you. And we really appreciate it. Now, I want to say that I've always respected lawyers who are deeply and passionately committed to what they're saying. It always leaves a favorable impression with me. I thank you both. Thank you. Thank you, Your Honor.
judges: J. Harvie Wilkinson III, G. Steven Agee, Pamela A. Harris